UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-21270-CIV-COOKE/O'SULLIVAN

LEANDRE HOWARD,

      Petitioner,

v.

MARK INCH,
SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS

      Respondent.

                                  /

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the Amended Motion to Vacate
[Judgment] and Sentence and Incorporated Memorandum of Law (DE# 9, 5/3/21)
(footnote omitted).  This matter was referred to Chief United States Magistrate Judge
John J. O'Sullivan by the Honorable Marcia G. Cooke, United States District Judge, for
a Report and Recommendation in accordance with 28 U.S.C. § 636(b). (DE# 6,
4/21/21). Having carefully considered the Amended Petition, the Response to Order to
Show Cause (DE# 12, 6/19/21), and the Petitioner's Reply to Response to Order to
Show Cause (DE# 16, 8/15/21), the exhibits thereto, the court file, and applicable law,
the undersigned respectfully recommends that the petitioner's Amended Motion to
Vacate [Judgment] and Sentence and Incorporated Memorandum of Law (DE# 9,
5/3/21) be DENIED.

## PROCEDURAL BACKGROUND

On June 26, 2008, the petitioner was charged in state court under Florida law
with attempted second degree murder (Count 1), fleeing and eluding a law enforcement
officer (Count 2), and resisting an officer without violence (Count 3). See Fla. Stat. §§

782.04(2), 316.1935(1), and 843.02, respectively.

On May 2, 2011, the petitioner accepted a guilty plea and was sentenced to six years in prison for Count 1 to be followed by four years of probation and one year of community control; five years in prison for Count 2 and 364 days in jail, followed by four years of probation for Count 3, with all counts to run concurrently.

On October 8, 2013, the petitioner was released from prison and began serving the community control and probation portion of his sentence.

On January 28, 2017, the petitioner was arrested in M17-2925 for possession of marijuana and given a "promise to appear" in court.

On January 31, 2017, the petitioner was arrested in F17-001990 for possession of ethylpentylone (a/k/a "MDMA").

On June 21, 2017, an amended affidavit of violation of probation was filed which listed as a violation of his probation, the petitioner's two arrests for possession of marijuana and MDMA.

On June 30, 2017, a probation violation affidavit was filed following the petitioner's arrest for possession of marijuana on January 28, 2017, and possession of MDMA on January 31, 2017.  In addition to the new law violations, the petitioner was charged with violating probation for failing to pay the $5 monthly cost of probation supervision.

On June 30, 2017, Judge Stacy Glick held a probation violation hearing.  The petitioner, Officer Suarez and Officer Cao testified during the probation violation hearing.  The probation officer also testified that the petitioner failed to pay his five dollar a month probation fee.  Judge Glick found that the petitioner violated the terms of his

probation for his non-payment of the monthly probation fee as well as willfully violated his probation for the two incidents involving possession of marijuana and MDMA.  The state trial court revoked the petitioner's probation and sentenced him to twenty years with credit for time served.  The trial court filed the judgment and sentence on June 30, 2017.

On July 20, 2017, the trial court filed its order revoking the petitioner's probation.

On July 24, 2017, the public defender filed a Notice of Appeal on the Judgment and Sentence in 3D17-1699.

On April 4, 2018, the Third District Court of Appeal concluded that the appeal was wholly frivolous and granted the public defender's motion to withdraw as counsel for the petitioner. That same day, the Third District Court of Appeal per curiam affirmed the Judgment and Sentence in 3D17-1699. The Mandate was issued on April 30, 2018.

On May 4, 2018, the petitioner filed his initial Motion for Post-Conviction Relief and raised the following five arguments: (1) ineffective assistance of counsel when counsel failed to move to disqualify the trial judge during the probation revocation hearing; (2) ineffective assistance of counsel when counsel failed to file a motion to suppress the marijuana; (3) ineffective assistance of counsel when counsel failed to file a motion to suppress the MDMA; (4) ineffective assistance of counsel when counsel failed to conduct adequate pre-trial investigations and call exculpatory witnesses to the probation hearing; and (5) ineffective assistance of counsel when counsel failed to argue lack of jurisdiction in his original F08020775A case when an amended information was filed in 2010.

On May 4, 2018, the petitioner filed his Petition for a Writ of Habeas Corpus in

3

the Third District Court of Appeal, Case No. 3D:18-942. On May 14, 2018, the Third

District Court of Appeal in Case No. 3D:18-942 denied the petition for writ of habeas

corpus.

On June 1, 2018, the petitioner filed his Amended Motion for Post-Conviction

Relief in which he raised the following five grounds for relief:  (1) ineffective assistance

of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution

for failing to move to disqualify the trial judge during the probation revocation hearing;

(2) ineffective assistance of counsel in violation of the Sixth and Fourteenth

Amendments to the U.S. Constitution for failing to file a motion to suppress the

marijuana; (3) ineffective assistance of counsel in violation of the Sixth and Fourteenth

Amendments to the U.S. Constitution for failing to file a motion to suppress the MDMA;

(4) ineffective assistance of counsel in violation of the Sixth and Fourteenth

Amendments to the U.S. Constitution for failing  to conduct adequate pre-trial

investigations and call exculpatory witnesses to the probation hearing; and (5)

ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to

the U.S. Constitution for failing to argue lack of jurisdiction in his original F08020775A

case when an amended information was filed in 2010.

On July 12, 2018, while his amended post-conviction motion was pending in the

trial court, the petitioner filed a petition for writ of habeas corpus in the Third District

Court of Appeal, Case. No. 3D18-1451.  On July 20, 2018, the Third District Court of

Appeal, in Case. No. 3D18-1451, denied the writ of habeas corpus, but did not issue a

mandate.

On August 29, 2018, the petitioner filed a motion for appointment of counsel in

4

the trial court.  During a hearing on October 5, 2018, the trial court denied the petitioner's request for appointment of counsel for the post-conviction proceeding and set an evidentiary hearing on the petitioner's Amended Motion for Post-Conviction Relief. The trial court ruled that the petitioner would have to represent himself because the trial court did not find any complex issues within the motion that would entitle the petitioner to an attorney for the evidentiary hearing on the post-conviction motion.

On December 14, 2018, the trial court held an evidentiary hearing on the petitioner's Amended Motion for Post-Conviction Relief.  The petitioner represented himself at the evidentiary hearing and questioned his former defense counsel.

On January 11, 2019, the trial court issued its order denying the Amended Motion for Post-Conviction Relief.

On January 3, 2019, the petitioner filed an appeal of the denial of his Amended Motion for Post-Conviction Relief.

On July 8, 2020, the Third District Court of Appeal issued a Mandate on its per curiam affirmance of the trial court's denial of the petitioner's  Amended Motion for Post-Conviction Relief.

On May 3, 2021, the petitioner filed the Amended Motion to Vacate [Judgment] and Sentence and Incorporated Memorandum of Law (DE# 9, 5/3/21) (footnote omitted).

On June 19, 2021, the respondent filed the Response to Order to Show Cause (DE# 12, 6/19/21) and attached exhibits.

On August 15, 2021, the petitioner filed the Petitioner's Reply to Response to Order to Show Cause (DE# 16, 8/15/21).

The motion is ripe for disposition.

## **FACTUAL BACKGROUND**

I.    <u>Marijuana Bicycle Incident</u>

During the June 30, 2017 probation violation hearing, Officer Cao testified that on the night of January 28, 2017, at approximately 7:32 p.m., he observed the petitioner, on a bicycle circling a four-way intersection. Probation Violation Hearing ("PVH") Transcript at 62 (DE# 12-2, 6/19/21).[1]  Officer Cao testifed that the petitioner's bicycle did not have a front or rear light on it and that he conducted a consensual encounter to tell the petitioner the importance of having a rear light. <u>Id</u>. at 65 .  Officer Cao further testified that the petitioner told the officer that the petitioner had rolling paper and a bag of weed. <u>Id</u>. Office Cao explained that the petitioner was not in custody at the time he made the statement. <u>Id</u>. at 66.  The petitioner retrieved a "nickel" bag of marijuana from one his pockets, which was introduced as State's Exhibit 2. <u>Id</u>. at 66-69.

During the probation violation hearing, the petitioner provided conflicting facts and testified that three police unit cars pulled in front of him, stopped him and grabbed him. <u>Id</u>. at 127. The arrest affidavit does not reflect these alleged facts. <u>Id</u>.  The petitioner further testified that Officer Williams and Officer Cao checked him without consent and handcuffed him and picked up some paraphernalia, from the ground, not on the petitioner's person. <u>Id</u>. at 127-28. The petitioner testified that he begged the officers not to charge him and they gave him a promise to appear. <u>Id</u>. at 128.  On cross-examination, the petitioner testified that the marijuana was planted on him by the police.

---

[1]References to page numbers correlate to the Court Docket page number, not the transcript page number or the Record on Appeal ("ROA") assigned page number.

Id. at 137.

During the probation revocation hearing, the trial court noted that an officer can legally approach someone regarding the law that requires lights on a bicycle. Id. at 156. The trial court rejected the petitioner's claim that the marijuana was planted on him and explained:

> But [the officer] gave [Mr. Howard] a promise to appear.  He could have arrested him right there, if he was really out to get Mr. Howard, but he didn't.  So he gave him an opportunity to appear.  He didn't know that [Mr. Howard] was on probation the other officer testified. So I don't think the officer was trying to set him up.

PVH Transcript at 157 (DE# 12-2, 6/19/21).

At the December 14, 2018 post-conviction evidentiary hearing, the petitioner's former defense counsel, Assistant Public Defender Steve Levine, testified that Officer Cao's arrest affidavit had indicated that the officer initiated a stop pursuant to a consensual encounter and that there was a difference in facts as to whether or not it was a stop or a consensual encounter.  Dec. 14, 2018 Post-Conviction Hearing Transcript (Ex. BB) (DE# 12-5 at 35, 6/19/21). Mr. Levine testified that he did not file a motion to suppress the marijuana because there were factual discrepancies, it was for a probation violation, and that the trial court likely would have sided with the State. Id. Additionally, Mr. Levine testified that "in hindsight, he should have filed a motion to suppress to protect the record" but "that it was a strategy decision not to file the motion [to suppress the marijuana.]". Id. at  192.

In the Order Denying Amended Motion for Postconviction Relief (DE# 12-5, 6/19/21)(Ex. CC at 54-56), the trial court found that "[t]he officer had a legitimate reason to stop and talk to the Defendant about the importance of lights on the bike" and that

"[t]he Defendant does not dispute that he was riding his bike without lights in the road" and the defendant "admit[ted] that the only vehicle traveling on the road was the police car." Id. at 54.   The trial court did not find the petitioner credible and found "it very hard to believe in a neighborhood that claims to be a high crime, high narcotic area that a nice bag of weed would just be sitting on the street, dropped by somebody on the street. That thing would go very quickly, okay? ...." PVH Transcript at 118 (DE# 12-7, 6/19/21). Instead, the subject order stated that the petitioner "cannot show prejudice" because the petitioner "was found to have violated his probation for three different reasons - the possession of marijuana, possession of MDMA, and failure to pay the $5 cost of supervision." Order Denying Amended Motion for Postconviction Relief at 180 (DE# 12-5 at 54-56, 6/19/21).

II.   MDMA Sidewalk Incident

The MDMA sidewalk incident occurred on January 30, 2017 approximately two blocks away from the marijuana bicycle incident.  PHV Hearing Transcript at 72 (DE# 1-2, 6/19/21). Officer Cao testified that the petitioner was standing on the sidewalk in a well-lit intersection with a while male and a black male in a high crime, high narcotics area that includes multiple shootings, multiple homicides, loitering, narcotics sales and narcotics use. Id. at 73-74, 77, 79. Officer Cao explained that on other prior occasions

We told them several times that standing by the sidewalk impedes the traffic of people walking on the sidewalk. So we told them if they want, they can hang inside the house. ... They take out chairs, they drink some beers, stuff like that.

Id. at 74-75.  On January 30, 2017, Officer Cao stopped because Officer Suarez told him to stop the car. Id. at 75. Officer Cao exited saw the petitioner turning around and making a movement like the petitioner was tossing something but did not see what the

petitioner tossed. Id. at 75-76. 90-96. After Officer Suarez told Officer Cao that Officer

Suarez saw the defendant toss something, Officer Cao approached and detained the

defendant. Id. at 76.  Officer Cao testified that Officer Suarez showed Officer Cao the

baggy containing a suspected MDMA pill[2] that Officer Suarez retrieved from the ground.

Id. at 76, 78, 81.  Officer Cao testified that they took the petitioner into custody. Id. at

79. Officer Cao testified that he did not see anyone else in the vicinity make any

throwing motions. Id. at 98.

> On the arrest form, Officer Suarez stated that:

>  while traveling south [bound] on NW 3rd Ave[nue] approaching 16th in a
> City of Miami Police marked unit, I observed 2 black males and 1 white
> male standing on the corner facing east bound. When this Officer and
> Officer Cao ... approached the intersection and exited the vehicle, both
> officers observed one of the black males wearing blue jeans and a blue
> jean top slightly turn away from us and throw a clear baggie towards the
> gate near the grass. Never losing sight of the clear plastic baggie, this
> officer retrieved the clear baggie from the ground and revealed suspected
> MDMA inside of the baggie....

Complaint/Arrest Affidavit at 25-26 (DE#12-2, 6/19/21).  At the probation violation

hearing, Officer Suarez testified that

> Once [the petitioner] notice my marked police car, [the petitioner] made a
> gesture, which was slightly turning away.  Before the car stopped, my door
> was already opened.  I exited my vehicle, that is when [the petitioner] went
> ahead and tossed away the object.

PHV Hearing Transcript at 78 (DE# 12-7, 6/19/21).  Officer Suarez testified that he

found the item on the sidewalk next to the petitioner behind a tree and next to a fence.

---

[2]Karen Bromfield, a chemist at the Miami-Dade Police Crime Laboratory known
as the Forensics Service Bureau, testified that the pink pill in the baggy retrieved from
the ground near the petitioner on January 30, 2017 that she tested was ethylpentylone
a/k/a MDMA, a controlled substance under Florida law. PHV Hearing Transcript at 106-
107 (DE# 1-2, 6/19/21).

Id. at 92, 93.

At the probation violation hearing, the petitioner testified that the officers pulled up in three police vehicles, handcuffed his two friends and him, and searched the area including his grandmother's car and other parked cars. Id. at 91-93, 101. The petitioner denied he had possession of the MDMA pill or that he threw anything to the ground when the officers approached. Id. at 93.

III.   Two Witnesses Not Called to Testify re: the MDMA Sidewalk Incident

In support of the petitioner's Amended Motion for Post-Conviction Relief, the petitioner filed the affidavits of Joseph Claget and Xavier Warren, the two men who allegedly were present when the officers found the MDMA.  Messrs. Claget and Warren averred the following in their respective sworn affidavits:

> myself, Mr. Howard and Xavier Warren[3] were all standing outside of Mr. Howards [sic] grandfathers [sic] home when three City of Miami marked patrol vehicles approached us, exited their vehicles and asked Mr. Howard to come over.  The Officers detained and thoroughly searched all of us then placed Mr. Howard in handcuffs while the other Officers searched the grounds and a nearby vehicle.  We were not engaged In [sic] any criminal activity, were not loitering, were not drinking alcohol or doing anything that would give cause for the police to stop and search us.  I would have testified that Mr. Howard nor any of us at any time possessed or tossed any drugs onto the ground and I have no knowledge of where the drugs came from.

See Claget Affidavit at 43  (DE# 1-3, 4/4/21) (Ex. C); and Warren Affidavit at 45 (DE# 1-3, 4/4/21).

When questioned by the trial court during the December 14, 2018 post-conviction

---

[3]Mr. Warren's affidavit mistakenly stated Xavier Warren. See Amended Petition at 17 (DE# 9, 5/3/21).

evidentiary hearing, the petitioner responded that he asked his former defense counsel to call Messrs. Claget and Warren as witnesses but "maybe I ain't like get deep into a conversation about it." Dec. 14, 2018 Hearing Transcript (Ex. BB at 198-199) (DE# 12-5, 6/19/21).  The petitioner's former defense counsel, Mr. Levine, testified that "I don't remember that particularity [sic], but my answer would be I will not call witnesses on your behalf, if I have not spoken to them previously.  And I do not remember speaking to these witnesses previously."  Id.  Mr. Levine also testified that neither Mr. Claget nor Mr. Warren contacted him. Id.

During the probation violation hearing, the trial court did not find the petitioner's testimony credible regarding the MDMA incident and explained:

> Again, I find it hard to believe that in this neighborhood where there is a high amount of activity, high ... crime area that an MDMA pill would be sitting on the ground untouched by anybody else.  So either Mr. Howard had those narcotics or controlled substances on him or he is the most unlucky person in Miami-Dade County that so happens that every time two police officers pull him over on two different days, happens to have drugs in his vicinity. So I don't fin[d] Mr. Howard's testimony to be credible.  I find that he is in violation of his probation.

PVH Transcript at 118 (DE# 12-7, 6/19/21).

## LEGAL ANALYSIS

### I.     Standard of Review for Federal Habeas Relief of State Prisoner

#### A.     Presumption of Correctness and Substantial Deference

Section 2254(e)(1) mandates a statutory presumption of correctness to the state court's factual findings in federal habeas petitions.  Thus, a federal court must presume the state court's factual findings are correct unless the petitioner overcomes them by presenting clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010).  The federal habeas court presumes that state courts

know and follow the law.  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).

The federal district court must give substantial deference to the state court's rulings. A "general framework of substantial deference" limits a federal court's "review of every issue decided in the state courts" when determining whether to grant or deny a Section 2254 federal habeas corpus petition.[4]  Cummings v. McNeil, 588 F.3d 1331, 1355 (11th Cir. 2009) (quoting Parka v. Allen, 565 F.3d 1258, 1267 (11th Cir. 2009) (quotations and citations omitted)).  Federal habeas relief will not be granted "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652 (2004)); Meders v. Warden Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019).

Pursuant to Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant relief to a state prisoner unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."  Id. (quoting Bell v. Cone, 535 U.S. 685 (2002)).

Ward, 592 F.3d at 1155 (quoting 28 U.S.C. § 2254(d)).  "By its terms [Section 2254(d)]

bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the

exception in [Sections] 2254(d)(1) and (2)."  Richter, 562 U.S. at 98.  "A state court must

be granted a deference and latitude that are not in operation when the case involves

review under the Strickland standard itself."  Id. at 101 "Section 2254(d) reflects the

view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems,' not a substitute for ordinary error correction through appeal." Id. at

102-103 (quoting Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J.,

concurring in judgment)).  "The question under AEDPA is not whether a federal court

believes the state court's determination was correct but whether that determination was

unreasonable – a substantially higher threshold."  Schriro, 550 U.S. at 473. (citation

omitted).  "If this standard is difficult to meet, that is because it was meant to be."

Richter, 562 U.S. at 102.

    The Eleventh Circuit "ha[s] held that to be 'contrary to' clearly established federal

law, the state court must either (1) apply a rule 'that contradicts the governing law set

forth by Supreme Court case law,' or (2) reach a different result from the Supreme Court

'when faced with materially indistinguishable facts.'" Ward, 592 F.3d at 1155 (quoting

Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003)).

    Regarding the "unreasonable application" prong of Section 2254(d)(1), the

Eleventh Circuit has held

        [a] state court decision is an "unreasonable application" of clearly
        established law if the state court unreasonably extends or fails to extend a
        clearly established legal principle to a new context.  An application of
        federal law cannot be considered unreasonable merely because it is, in
        our judgment, incorrect or erroneous; a state court decision must also be
        unreasonable.  Questions of law and mixed questions of law and fact are

13

reviewed *de novo*, as is the district court's conclusion regarding the
reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quoting Williams v.
Taylor, 529 U.S. 362, 407, 410-11 (2000) and citing LeCroy v. Sec'y, Fla. Dep't. of
Corr., 421 F.3d 1237, 1259 (11th Cir. 2005)).  The question for the federal court is
whether the state's court application is objectively unreasonable. Williams v. Taylor, 529
U.S. 362, 409-10 (2000) (explaining that "the most important point is that an
*unreasonable* application of federal law is different from an *incorrect* application of
federal law") (emphasis in original).

In Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), the Supreme Court explained
that "a decision adjudicated on the merits in a state court and based on a factual
determination will not be overturned on factual grounds unless objectively unreasonable
in light of the evidence presented in the state-court proceeding."  To be entitled to relief
based on the second prong, a state court's "unreasonable determination of the facts,"
the petitioner must rebut "the presumption of correctness [of a state court's factual
findings] by clear and convincing evidence."  Ward, 592 F.3d at 1155-56 (quoting 28
U.S.C. § 2254(e)(1)).

**B.      Ineffective Assistance of Counsel**

Ineffective assistance of counsel is a difficult claim on which to obtain habeas
relief.  See Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) ("[T]he
cases in which habeas petitioners can properly prevail on the ground of ineffective
assistance of counsel are few and far between.") (quoting Rogers v. Zant, 13 F.3d 384,
386 (11th Cir. 1994)).

The Eleventh Circuit applies the two-prong test set forth in Strickland v.

14

Washington, 466 U.S. 668, 687-88 (1984), to analyze an ineffective assistance of counsel claim.  Under Strickland, "the benchmark for judging a claim of ineffective assistance of counsel is whether counsel's performance 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Id. at 686; see Ward, 592 F.3d at 1163.  Strickland requires the defendant to prove: (1) that counsel's performance fell below constitutional standards, that is, was deficient; and (2) that the deficient performance prejudiced the defense.[5] Strickland, 466 at 687; see Diaz v. United States, 930 F.2d 832 (11th Cir. 1991).

The Eleventh Circuit has determined that "because both parts of the test must be satisfied to show a Sixth Amendment violation, a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)); see Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see also,  Waters v. Thomas, 46 F.3d 1506, 1510 (11th

---

[5] When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."  Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc), cert. denied, 531 U.S.1204 (2001).  The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance."  Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11th Cir.), cert. denied, 537 U.S. 812 (2002) (quoting Strickland, 466 U.S. at 690).  Review of counsel's performance is to be highly deferential.  Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.").  A claim of ineffective assistance of counsel is a mixed question of law and fact.  Strickland, 466 U.S. at 698.

Cir. 1995).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.  Under the additional layer of deference to state court decisions imposed by the AEDPA, the petitioner "must also show that in rejecting his ineffective assistance of counsel claim the state court 'applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" Rutherford v. Crosby, 385 F.3d 1300 (11th Cir. 2004) (quoting Bell v. Cone, 535 U.S. 685, 699 (2002)).

In the Eleventh Circuit, "the petitioner bears the heavy burden of proving his ineffective-assistance-of-counsel claim by a preponderance of the evidence."  See, Ward, 592 F.3d at 1163 (11th Cir. 2010) (citing Putman v. Head, 268 F.3d 1223, 1243 (11th Cir. 2001)).  If the petitioner proves deficient performance, then he must establish prejudice to be entitled to relief.  To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome."  Id.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Id. at 696.

### C.    Exhaustion of State Remedies and Procedural Bar

A petitioner must exhaust all state court remedies before seeking federal habeas relief under Section 2254.  28 U.S.C. § 2254(b)(1). To seek federal habeas relief, a

16

state petitioner must satisfy the critical prerequisite of "properly rais[ing] the federal

constitutional claim in the state courts." Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir.

2010) (citing 28 U.S.C. § 2254(b)).  Thus, the petitioner must exhaust his state

remedies by "fairly present[ing] every issue raised in his federal petition to the state's

highest court, either on direct appeal or on collateral review." Id. (citing Castille v.

Peoples, 489 U.S. 346, 351 (1989)); see O'Sullivan v. Boerkel, 119 S. Ct. 1728, 1732

(1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process.").  "The exhaustion requirement is designed to avoid the

'unseemly' result of a federal court ' upset[ting] a state court conviction without' first

according state courts an 'opportunity to ... correct a constitutional violation." Davila v.

Davis, 137 S. Ct. 2058, 2064 (2017) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)

(internal quotation marks omitted)).  In the present case, the parties agree and the

undersigned finds that the petitioner has exhausted all of his claims and is not

procedurally barred for the purpose of habeas review. See Motion at 3-4 (DE# 9,

5/3/21); and Response at 31 (DE# 12, 6/19/21).

III.    **The Petitioner Is Not Entitled to Habeas Relief on His Three
        Ineffective Assistance of Counsel Claims**

Three of the petitioner's four claims[6] for habeas relief are based on claims of

ineffective assistance of counsel.  First, the petitioner claims that his counsel was

ineffective for failing to file a motion to suppress marijuana found on January 28, 2017.

---

[6]The undersigned will separately address the petitioner's fourth claim for habeas relief based on the trial court's denial of the petitioner's request for appointment of post-conviction counsel for an evidentiary hearing.

Second, the petitioner claims that his counsel was ineffective because he failed to file a motion to suppress the MDMA found on January 31, 2017.  Third, the petitioner claims that his counsel was ineffective for failing to properly investigate the case and call two exculpatory witnesses who were present at the MDMA incident.  None of the three ineffective assistance of counsel claims warrants habeas relief under Section 2254.

> ### A.   No Ineffective Assistance of Counsel for Failing to File a Motion to Suppress Marijuana

> #### 1.   Petitioner's Arguments

The petitioner claims that his counsel was ineffective for failing to file a motion to suppress marijuana found during the bicycle encounter on January 28, 2017 based on an unconstitutional traffic stop. Amended Motion at 4, 7 (DE# 9, 5/3/21).  Additionally, the petitioner claims that because no motion to suppress the marijuana was filed the trial court did not consider the lawfulness of the bicycle stop. Amended Petition at 10 (DE# 9, 5/3/21).  The petitioner argues further that the trial court never determined whether the petitioner's former defense counsel's failure to file a motion to suppress the marijuana was a sound legal strategy so this Court must determine Strickland's performance prong *de novo*.  Id. (citing LeCroy v. Sec'y, Florida Dep't of Corrs., 421 F.3d 1237, 1262 (11th Cir. 2005)). The petitioner speculates that his counsel's failure to file a motion to suppress the marijuana "prejudiced [Mr. Howard] because *if* the [trial court] granted the motion to suppress, both the marijuana and Mr. Howard's statement would have been suppressed as 'fruits of the poisonous tree.'" Id. (emphasis added). The petitioner contends that there was no sound trial strategy for failing to suppress the marijuana and that the probation violation based on marijuana possession would have been dismissed and necessitated a re-sentencing on the remaining probation violations.

18

Id.

The petitioner argues that "once Officer Cao stopped [the petitioner], [the petitioner] was not free to leave and the officer's encounter became an investigatory stop which is inconsistent with a consensual encounter." Amended Petition at 7 (DE# 9, 5/3/21).  The petitioner relies on United States v. Perez, 443 F.3d 772 (11th Cir. 2006), wherein the Eleventh Circuit categorized police and citizen encounters into three types: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." Perez, 443 F.3d at 777.  To determine whether a police-citizen encounter was consensual or whether a seizure occurred, the Eleventh Circuit considers the following factors:

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

Id. at 778 (quotations omitted).

During the probation violation hearing, Officer Cao testified that on the night of January 28, 2017, at approximately 7:32 p.m., he observed the petitioner on a bicycle circling a four-way intersection.  PVH Transcript  at 62 (DE# 12-2, 6/19/21). Officer Cao testifed that the petitioner's bicycle did not have a front or rear light on it and that he conducted a consensual encounter to tell the petitioner the importance of having a rear light. (ROA 448).  Section 316.2065(7) of the Florida Statutes prescribes:

> Every bicycle in use between sunset and sunrise shall be equipped with a lamp on the front ... and a lamp and reflector on the rear ... A law enforcement officer may
> issue ... a verbal warning to a bicycle rider who violates this subsection or may issue a citation and assess a fine for a pedestrian violation as provided in s. 318.18 ....

Fla. Stat. § 316.2065(7). Officer Cao further testified that the petitioner told the officer that he had rolling paper and a baggy of weed. PVH Transcript at 65 (DE# 12-2, 6/19/21). Office Cao explained that the petitioner was not in custody at the time he made the statement. Id. at 66.  The petitioner retrieved a "nickel" bag of marijuana from one his pockets, which was introduced as State's Exhibit 2. Id. at 69. The respondent maintains that Officer Cao had a legitimate reason to speak with and interact with the petitioner and issue him a verbal warning.

During the probation violation hearing, the petitioner testified that three police unit cars pulled in front of him, stopped him and grabbed him. Id. at 88. The arrest affidavit does not reflect these alleged facts. Id. The petitioner further testified that Officer Williams and Officer Cao checked him without consent and handcuffed him and picked up some paraphernalia, from the ground, not on the petitioner's person. Id. at 88-89. The petitioner testified that he begged the officers not to charge him and they gave him a promise to appear. Id. at 89. On cross-examination, the petitioner testified that the marijuana was planted on him by the police. Id. at 98.

### 2.      Respondent's Arguments

The respondent argues that petitioner's defense counsel was not deficient in failing to make a meritless suppression motion because the marijuana was discovered pursuant to a valid traffic stop. Response at 41 (DE# 12, 6/19/21).  The respondent argues further that counsel cannot be held deficient for failing to file a non-meritorious motion. Id. (citing Meeks v. Moore, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's assertion that counsel has no duty to raise non-meritorious motions); see Smith v. State, 310 So. 3d. 366 (Fla. 2020).

The trial court noted that an officer can legally approach someone regarding the law of having lights on a bicycle. PVH Transcript at 156-157 (DE# 12-2, 6/19/21). The trial court rejected the petitioner's claim that the marijuana was planted on him and explained:

> But [the officer] gave [Mr. Howard] a promise to appear. He could have arrested him right there, if he was really out to get Mr. Howard, but he didn't. So he gave him an opportunity to appear. He didn't know that [Mr. Howard] was on probation the other officer testified. So I don't think the officer was trying to set him up.

Id. at 157 (DE# 12-2, 6/19/21).

At the post-conviction evidentiary hearing, the petitioner's former defense counsel, Steve Levine, testified that Officer Cao's arrest affidavit had indicated that the officer initiated a stop pursuant to a consensual encounter and that there was a difference in facts as to whether or not it was a stop or a consensual encounter. Post-conviction Hearing Transcript at 191 (DE# 12-9, 6/19/21). Mr. Levine testified that he did not file a motion to suppress the marijuana because there were factual discrepancies, it was for a probation violation, and that the trial court likely would have sided with the State. Id. Additionally, in hindsight, Mr. Levine testified that he could have filed a motion to suppress. Id. at 192. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight...." Strickland, 466 U.S. at 689. Mr. Levine decided not to file the motion to suppress the marijuana as a strategic decision. Id. at 193 . "A strategic or tactical decision is not a valid basis for an ineffective claim unless a defendant is able to show that no competent counsel would have utilized the tactics employed by trial counsel. Windom v. State, 886 So. 2d 915, 922 (Fla. 2004) (quoting trial court order) (citing White v. State, 729 So. 2d 909, 912

21

(Fla. 1999) (citing <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1322 (11th Cir. 1998)).  The respondent maintains that there was no seizure or stop beyond a consensual encounter. Response at 44 (DE# 12, 6/19/21). The Fourth Amendment is not implicated in consensual encounters and officers do not need suspicion. <u>United States v. Knights</u>, 989 F.3d 1281 (11th Cir. 2021).

Finally, the respondent argues that even if the petitioner were able to show deficient performance, he failed to show prejudice. To succeed on an ineffective assistance of counsel claim based on the failure to file a motion to suppress, the petitioner "must demonstrate that there is a reasonable probability that the motion would have been granted." <u>Guzman-Aviles v. State</u>, 226 So.3d 339, 344 (Fla. 5th DCA 2017) (citation omitted). The record reflects that the trial court would have denied a motion to suppress the marijuana because the trial court found Officer Cao's testimony credible and Mr. Howard's testimony not credible.  The respondent argues further that the trial court would have revoked the petitioner's probation and imposed the same sentence if the marijuana was suppressed due to the probation violations of non-payment of probation supervision fees and the new violation for possession of MDMA.

3.    <u>Analysis</u>

a.    <u>No Deficient Performance</u>

In the Order Denying Amended Motion for Postconviction Relief (DE# 12-5 at 54-56, 6/19/21), the trial court found that "[t]he officer had a legitimate reason to stop and talk to the Defendant about the importance of lights on the bike" and that "[t]he Defendant does not dispute that he was riding his bike without lights in the road" and the defendant "admit[ted] that the only vehicle traveling on the road was the police car."

22

Id. at 179. Additionally, the trial court acknowledged the testimony of the petitioner's former defense counsel who stated that "in hindsight, he should have filed the motion to protect the record" but "that it was a strategy decision not to file the motion [to suppress the marijuana.]" Id. at 180.  While the trial court did not expressly rule on the ineffective assistance of counsel claim in the subject order, during the probation violation hearing, the trial court did not find the petitioner credible.  The trial court found "it very hard to believe in a neighborhood that claims to be a high crime, high narcotic area that a nice bag of weed would just be sitting on the street, dropped by somebody on the street. That thing would go very quickly, okay? ...." PVH Transcript at 118 (DE# 12-7, 6/19/21). Instead, the subject order stated that the petitioner "cannot show prejudice" because the petitioner "was found to have violated his probation for three different reasons - the possession of marijuana, possession of MDMA, and failure to pay the $5 cost of supervision." Order Denying Amended Motion for Postconviction Relief at 180 (DE# 12-5 at 54-56, 6/19/21).

The Third District Court of Appeal  affirmed per curiam the trial court's order denying the petitioner's motion for post-conviction relief. Respondent's Appendix Ex. OO (DE# 12-6, 6/19/21).  Additionally, the Third District Court of Appeal denied per curiam the petitioner's petition for writ of habeas corpus. Respondent's Appendix Ex. X at 3 (DE# 12-5, 6/19/21).  Because the state appellate court decision did not provide reasons for its opinions, "the federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that provide[s] a relevant rationale." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018)).  A state court's factual findings enjoy a  presumption of correctness that a petitioner has the burden of rebutting

with clear and convincing evidence. 28 U.S.C. 2254(e)(1); <u>Maharaj v. Sec'y Dep't of Corr.</u>, 432 F.3d 1292, 1309 (11th Cir. 2005).  The undersigned finds that the petitioner has not satisfied his high burden of proof.

The petitioner's arguments ignore what the trial court expressly found during the probation violation hearing.  The trial court found the police officers had a legal basis to encounter the petitioner on his bicycle that lacked lights.  The trial court also found Officer Cao's testimony credible and did not find the petitioner's testimony credible.  The trial court expressly rejected the petitioner's testimony that the marijuana was laying on the ground 40-50 feet away from the petitioner and subsequently planted on him by one of the officers.

In the present case, the trial court denied the petitioner's post-conviction motion and found that the petitioner did not establish prejudice to support his ineffective assistance of counsel claim against his former defense counsel for failing to file a motion to suppress the marijuana. Implicitly, the trial court found that there was no deficient performance by the petitioner's trial counsel because the bicycle stop was lawful and Officer Cao's testimony was credible while the petitioner's testimony was not. The petitioner has failed to rebut with clear and convincing evidence the state court's factual findings or the evidence in the record. <u>See</u>, 28 U.S.C. § 2254(e)(1); <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010). The petitioner has failed to satisfy <u>Strickland</u>'s deficient performance prong. Without deficient performance, there can be no prejudice and habeas relief should be denied.

b.    <u>No Prejudice</u>

In the Order Denying Amended Motion for Postconviction Relief (DE# 12-5 at 54-

56, 6/19/21), the trial court found that the petitioner "[did] not dispute that he was riding his bike without lights in the road" and that "[t]he officer had a legitimate reason to stop and talk to the [petitioner] about the importance of lights on the bike." Respondent's Appendix Ex. CC at 179-181, Order Denying Amended Motion for Postconviction Relief (DE# 12-5 at 54, 6/19/21).  The trial judge found that the petitioner "cannot show prejudice" because the petitioner "was found to have violated his probation for three different reasons - the possession of marijuana, possession of MDMA, and failure to pay the $5 cost of supervision." Id. at 180.   The respondent argues that even if the petitioner was able to show that his counsel's failure to move for post-conviction judgment of acquittal constituted deficient performance, the petitioner would be unable to satisfy Strickland's prejudice prong. The undersigned agrees.

In the present case, the petitioner did not show by clear and convincing evidence that he would have prevailed on a motion to suppress the marijuana given the facts in the record and the trial court's express findings that Officer Cao's testimony was credible and the petitioner's testimony was not credible. The trial court found that the bicycle stop was a lawful stop because it was undisputed that the encounter occurred at approximately 7:30 pm on January 28, 2017 and the petitioner's bicycle lacked lights on the front and the back. The petitioner failed to establish prejudice, that is a reasonable probability that the outcome of the proceeding would have been different had his counsel filed a motion to suppress the marijuana.

c. Conclusion

The undersigned finds that the petitioner has failed to show that the state trial court's denial of his ineffective assistance of counsel claim based on his former defense

counsel's failure to file a motion to suppress the marijuana, which was affirmed per

curiam on appeal, was objectively unreasonable.  Additionally, the petitioner has failed

to show that the Third District Court of Appeal which denied his habeas petition per

curiam was objectively unreasonable. See, Bell v. Cone, 535 U.S. 685, 699 (2002);

Rutherford v. Crosby, 385 F.3d 1300 (11th Cir. 2004). This Court should deny the

petition for habeas relief on the petitioner's first ground of ineffective assistance of

counsel for his former defense counsel's failure to file a motion to suppress the

marijuana.

> B.   No Ineffective Assistance of Counsel for Failing to File a Motion to
>      Suppress MDMA

> 1.   Petitioner's Argument

Because the trial court "never found that it was a sound trial strategy to fail to file

a motion to suppress the [MDMA]," the petitioner argues that the denial of his Rule

3.850 post-conviction motion[7] "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United

States; and/or was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." Amended Motion at 14-15 (DE# 9,

5/3/21).

The petitioner's second claim of ineffective assistance of counsel is based on his

trial counsel's failure to file a motion to suppress the MDMA that the petitioner argues

was found during an unlawful Terry stop on the sidewalk on January 31, 2017.  Id. at

_____

[7]The Third District Court of Appeal  affirmed per curiam the trial court's order
denying the petitioner's motion for post-conviction relief denied a habeas petition on the
same ground. Respondent's Appendix Ex. OO (DE# 12-6, 6/19/21).

12-15; see Terry v. Ohio, 392 U.S. 1 (1968).  The petitioner argues that two witnesses,

Joseph Claget and Xavier Warren, would have testified consistently with the petitioner

had his former defense counsel investigated the case, listed them as witnesses and

called them to testify at the probation violation hearing. Id. at 12. These alleged failures

are the basis of the petitioner's third claim of ineffective assistance of counsel and will

be addressed separately below.  The petitioner relies on his legal arguments regarding

the failure to file a motion to suppress the marijuana.

### 2.    Respondent's Argument

The respondent argues that the petitioner is not entitled to habeas relief

regarding the petitioner's ineffective assistance of counsel claim based on his former

defense counsel's failure to file a motion to suppress the MDMA. Response at 51 (DE#

12, 6/19/21).  The respondent maintains that the sidewalk encounter with the petitioner

on January 31, 2017 did not constitute a Terry stop. The respondent argues that in

Terry, the Supreme Court determined that "whenever a police officer accosts an

individual and  restrains his freedom to walk away, he has 'seized' that person." Terry,

392 U.S. at 16.  Additionally, the Supreme Court found that a "search" occurs when an

officer makes "a careful exploration of the outer surfaces of a person's clothing all over

his or her body in an attempt to find weapons." Id.

The respondent argues that the officers did not restrain the petitioner's freedom

to walk away and did not search the petitioner to find the MDMA.  The officers seized

the petitioner after he had discarded the baggy with the alleged drug and Officer Suarez

retrieved the baggie from the ground. Response at 51-52 (DE# 12, 6/19/21) (citing C.J.

v. State, 573 So. 2d 421 (Fla. 3d DCA 1991) (holding that "the police seizure of the

27

voluntarily abandoned cocaine [as two police officers approached the respondent] did not invade the respondent's reasonable expectation of privacy and therefore did not violate... the respondent's Fourth Amendment rights")). Relying on Florida law, the respondent argues further that the simple act of uniformed police officers exiting a marked police vehicle does not create a show of force that restrained the liberty of the petitioner or constituted a seizure.  Id. (citing G.M. v. State, 981 So. 2d 529 (Fla. 3d DCA 2008).  The respondent maintains that the MDMA sidewalk encounter did not constitute a Terry stop and that the petitioner voluntarily abandoned the MDMA when he tossed it as the police officers exited their police vehicle.

3.Analysis

a.    No Deficient Performance

The petitioner failed to satisfy the double deference standard that limits this Court's review of a claim of ineffective assistance of counsel that was denied by a state court.   28 U.S.C. § 2254(e)(1); Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010). During the probation violation hearing, the trial court rejected the petitioner's version of the facts that conflicted with the officers' testimony and explained:

> Again, I find it hard to believe that in this neighborhood where there is a high amount of activity, high ... crime area that an MDMA pill would be sitting on the ground untouched by anybody else.  So either Mr. Howard had those narcotics or controlled substances on him or he is the most unlucky person in Miami-Dade County that so happens that every time two police officers pull him over on two different days, happens to have drugs in his vicinity. So I don't fin[d] Mr. Howard's testimony to be credible.  I find that he is in violation of his probation.

PVH Transcript at 118 (DE# 12-7, 6/19/21).

b.    No Prejudice

In the Order Denying Amended Motion for Postconviction Relief (DE# 12-5 at 54-

28

56, 6/19/21), the trial judge found that the petitioner "cannot show prejudice" because the petitioner "was found to have violated his probation for three different reasons – the possession of marijuana, possession of MDMA, and failure to pay the $5 cost of supervision." Respondent's Appendix Ex. CC at 179-181, Order Denying Amended Motion for Postconviction Relief (DE# 12-5 at 54, 6/19/21).

c.    Conclusion

The undersigned finds that the petitioner has failed to show by clear and convincing evidence that the state trial court's denial of his ineffective assistance of counsel claim based on his former defense counsel's failure to file a motion to suppress the MDMA, which was affirmed per curiam on appeal, was objectively unreasonable. Additionally, the petitioner has failed to show that the Third District Court of Appeal which denied his habeas petition per curiam was objectively unreasonable. Harrington v. Richter, 562 U.S. 86, 99 (2011) ("[T]he habeas petitioner's burden [under Section 2254] ... must be met by showing there was no reasonable basis for the state court to deny relief."). This Court should deny the petition for habeas relief on the petitioner's second ground of ineffective assistance of counsel for his former defense counsel's failure to file a motion to suppress the MDMA.

C.    No Ineffective Assistance Re: Failure to Investigate and
       Call Two Exculpatory Witnesses

1.    Petitioner's Argument

The petitioner argues that the trial court's "denial of [his] Amended Motion for Post-Conviction Relief Pursuant to Fla. R. Civ. P. 3.850 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; and/or was based on an

29

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Amended Motion at 20 (DE# 9, 5/3/21).  The petitioner argues that the trial court failed to determine whether the petitioner's trial strategy not to investigate and call two potentially exculpatory witnesses namely, Joseph Claget and Xavier Warren, was sound. Id. at 19.

The petitioner's third claim of ineffective assistance of counsel is based on his trial counsel's failure to investigate and call two exculpatory witnesses. Although the Complaint/Arrest Affidavit stated that the Officer Suarez "observed 2 black males and 1 while male standing on the corner facing east bound," the arrest form did not include names or contact information for the other two men. Complaint/Arrest Affidavit, Ex. C (DE# 1-4, 4/4/21).  The petitioner filed sworn affidavits of Messrs. Claget and Warren in support of his Amended Motion for Post-Conviction Relief. See Claget Affidavit at 43 (DE# 1-3, 4/4/21); Warren Affidavit at 45 (DE# 1-3, 4/4/21).  In their respective affidavits, both men averred the following:

> myself, Mr. Howard and Xavier Warren[8] were all standing outside of Mr. Howards [sic] grandfathers [sic] home when three City of Miami marked patrol vehicles approached us, exited their vehicles and asked Mr. Howard to come over.  The Officers detained and thoroughly searched all of us then placed Mr. Howard in handcuffs while the other Officers searched the grounds and a nearby vehicle.  We were not engaged In [sic] any criminal activity, were not loitering, were not drinking alcohol or doing anything that would give cause for the police to stop and search us.  I would have testified that Mr. Howard nor any of us at any time possessed or tossed any drugs onto the ground and I have no knowledge of where the drugs came from.

Id.

---

[8]Mr. Warren's affidavit mistakenly stated Xavier Warren. See Amended Petition at 17 (DE# 9, 5/3/21).

The petitioner argues that "**[i]f** the Court found Mr. Claget and Mr. Warren to be credible when they testified that Mr. Howard was not in possession of the MDMA nor did they see him throw any [MDMA], the Court would not have violated Mr. Howard on the only felony violation that was pending before the Court." Amended Motion at 19 (DE# 9, 5/3/21) (emphasis added).  The petitioner argues further "since these witnesses directly contradicted Officer Cao **it is plausible** that the Court **could have disregarded** Officer Cao's testimony on the marijuana violation and found in Mr. Howard's favor on that count too, leaving only a technical violation [i.e. non-payment of probation supervision fees]." Id. (emphasis added). The petitioner concludes that the petitioner was prejudiced by his former counsel's failure to investigate and call these two witnesses contrary to the trial court's finding of no prejudice.

2.      Respondent's Argument

The respondent argues that the petitioner is not entitled to habeas relief regarding the petitioner's third ineffective assistance of counsel claim based on his former defense counsel's failure to investigate and call Messrs. Claget and Warren as witnesses regarding the MDMA.  Neither of the witnesses were identified by name in the police report and there was no witness list with their names on it. Response at 58 (DE# 12, 6/19/21).  The petitioner did not provide his former defense counsel with the names or contact information of Messrs. Claget or Warren. When questioned by the trial court during the December 14, 2018 post-conviction evidentiary hearing, the petitioner responded that he asked his former defense counsel to call Messrs. Claget and Warren as witnesses but "maybe I ain't like get deep into a conversation about it." Post-Conviction Hearing Transcript (Ex. BB 198-199) (DE# 12-9, 6/19/21).  The petitioner's

31

former trial counsel testified that "I don't remember that particularity [sic], but my answer would be I will not call witnesses on your behalf, if I have not spoken to them previously. And I do not remember speaking to these witnesses previously." Id. The petitioner's former trial counsel also testified that neither Mr. Claget nor Mr. Warren contacted him. Id. The respondent contends that based on the petitioner's own statements and actions, it was not unreasonable for the petitioner's former trial counsel not to call these witnesses to the hearing. Response at 57-58 (DE# 6/19/21) (citing Strickland, 466 U.S. at 691; Johnston v. Singletary, 162 F.3d 630, 642 (11th Cir. 1998); Rose v. State, 617 So.2d 291, 294-95 (Fla. 1993). Additionally, the respondent maintains that the petitioner's former defense counsel's practice of having defendants provide him contact information of potential witnesses and speaking to witnesses prior to taking any further action was reasonable and competent. Where, as here, former defense counsel's conduct is alleged to be ineffective, former defense counsel enjoys a strong presumption that the performance was reasonable. Finally, the respondent argues that even if the performance was ineffective, the petitioner fails to satisfy the prejudice prong because the two witnesses would testify as to the MDMA, not the marijuana.

3.    Analysis

a.    No Deficient Performance

The undersigned finds that the petitioner has failed to show that the state court's determination that the petitioner's former defense counsel was not ineffective when he failed to call Mr. Claget or Mr. Warren as witnesses regarding the petitioner's possession of MDMA was objectively unreasonable. The petitioner did not rebut his former defense counsel's testimony regarding the practice of requiring clients to provide

32

contact information for potential exculpatory witnesses and for counsel to speak with witnesses to determine whether to call them to testify on behalf of his client.

### b. No Prejudice

As the trial court found, and the Third District Court of Appeal affirmed per curiam, even if former defense counsel's failure to call two witnesses constituted ineffective assistance of counsel, the petitioner cannot show prejudice because he was convicted of two other probation violations, that is possession of marijuana and non-payment of probation supervision fees. Order Denying Amended Motion for Postconviction Relief (Ex. CC) (DE# 12-5, 6/19/21). Additionally, the petitioner's prejudice arguments are based on layers of speculation that if the trial court believed the contradictory testimony of the witnesses over the officers on the MDMA possession then the trial court may also discount the officer's testimony regarding the petitioner's possession of marijuana. The undersigned finds that the petitioner has failed to satisfy his burden of proof by clear and convincing evidence that he was prejudiced by this counsel's failure to call Mr. Claget and Mr. Warren.

### c. Conclusion

The petitioner has failed to overcome his high burden of showing by clear and convincing evidence that the state court's ruling on his claim regarding his former counsel's failure to call two exculpatory witnesses "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). The petitioner has also failed to demonstrate that his former counsel's ineffective performance deprived the petitioner of a fair proceeding with a reliable outcome.  The

petitioner ignores the record evidence and the trial court's disbelief of the petitioner's version of the facts that contradicted the officer's testimony. See Strickland, 466 U.S. at 695. Mr. Claget and Mr. Warren's affidavits echoed the petitioner's version of the facts. The petitioner speculates without clear and convincing evidence that the trial court may find the two witnesses more credible than the officers. The petitioner has not satisfied the high burden to obtain federal habeas relief from a state court decision that was affirmed on appeal on the same grounds presented here. Harrington, 562 U.S. at 102 ("As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings... It preserves authority to issue the writ [of habeas corpus] in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."). This Court should deny habeas relief on the petitioner's third claim for ineffective assistance of counsel for failing to call two witnesses.

IV.     Petitioner Is Not Entitled to Habeas Relief Due to the Trial Court's Denial of His Request for Appointment of Post-Conviction Counsel for an Evidentiary Hearing

The petitioner seeks habeas relief on the ground that the trial court erred in denying his motion for appointment of post-conviction counsel for the evidentiary hearing on his post-conviction claims, which was affirmed per curiam on appeal by the Third District Court of Appeal. The trial court found the petitioner was not entitled to the appointment of an attorney because his case did not involve a complex legal issue. October 5, 2017 Hearing Transcript at 12-13 (DE# 12-5, 6/19/21) (Ex. AA). The trial court explained that the petitioner had represented himself before the court previously and that the trial court found that the petitioner could represent himself. Id. at 13. The trial court set the evidentiary hearing and directed the petitioner to subpoena the two

34

witnesses, Mr. Claget and Mr. Warren, as well as the petitioner's former defense counsel.  The trial court explained that the petitioner has "to ask whoever [he's] getting advice from in prison or jail how [he] could [subpoena witnesses] or hire an attorney because [he] is not entitled to an attorney." Id. at 19.

In his Amended Petition, the petitioner argues that the trial court's evaluation of the Graham factors violated federal law and denied him due process under the Fifth Amendment. Amended Motion at 20 (DE# 9, 5/3/21); see Graham v. State, 372 So. 2d 1363, 1366 (Fla. 1979); State v. Weeks, 166 So. 2d 892 (Fla.1964).

In Graham, the Florida Supreme Court held that there is no absolute duty to appoint counsel for an indigent defendant in a post-conviction relief proceeding unless the application on its face reflects a colorable or justiciable issue or a meritorious grievance. Id. Florida courts consider the following four Graham factors to determine whether to appoint counsel in a post-conviction proceeding: (1) the adversary nature of the hearing; (2) the complexity of the issues; (3) the need for a hearing; and (4) the need for substantial research. Id.; see also Russo v. Akers, 724 So. 2d 1151, 1152-53 (Fla. 1988); Henderson v. State, 919 So. 2d 652, 654 (Fla .2006).  The petitioner argues further that "any doubt about the need for counsel must be resolved in favor of the indigent defendant." Amended Motion at 21 (DE# 9, 5/3/21) (citing Graham, 3672 So. 2d at 1366 (citing Hooks v. State, 253 So. 2d 424 (Fla. 1971), cert. denied, 405 U.S. 1044 (1972)).

The parties agree that the first three Graham factors are implicated when a court grants an evidentiary hearing as it did in this case. Amended Motion at 21; Response at 67; see Graham, 372 So. 2d at 1366 ("The determination that an evidentiary hearing is

35

necessary in itself implies that three of the four elements are involved.").  In the present case, only the fourth Graham factor, the need for substantial research, is in dispute.

Some of the cases cited by the petitioner actually support the respondent's argument. See Hooks v. State, 253 So. 2d 424, 426 (Fla. 1971) (denying the petitioner's motion for appointment of counsel and finding that "the questions in the petition for certiorari are not so complex as to require the appointment of counsel in order to accomplish a fair and thorough presentation of petitioner's claims to this Court"); State v. Weeks, 166 So. 2d 892, 897 (Fla. 1964) (quashing the appellate court's decision that "there is an absolute organic right to assistance of counsel"). In Weeks, the Supreme Court of Florida explained that in civil collateral proceedings the right to assistance of counsel is not absolute under the Sixth Amendment but that "Fifth Amendment due process would require such assistance [of counsel] if the post-conviction motion presents apparently substantial meritorious claims for relief and if the allowed hearing is so complex as to suggest the need." Weeks, 166 So. 2d at 896.

In his Reply, the petitioner reiterates that Henderson, which is also cited by the respondent, supports his argument that the trial court erred in failing to appoint post-conviction counsel. Additionally, in his Reply, the petitioner argues that substantial legal research was needed to address the differences between consensual encounters and Terry stops, issues of abandonment, the need to subpoena and examine witnesses including Messrs. Claget and Warren, and the need to prove the performance and prejudice prongs of Strickland. Reply at 8 (DE# 16, 8/15/21).  The petitioner contends that as an incarcerated individual it was impossible for him to conduct the alleged substantial legal research given the logistical challenges that the petitioner raised with

36

the Court during the status conference before the evidentiary hearing. Reply at 8 (DE# 16, 8/15/21) (citing Amended Motion at 22).  In his Reply, the petitioner explains that Henderson, which the respondent cites as well, supports his Amended Motion.  In Henderson, the appellate court reversed the trial court's denial of appointment of post-conviction counsel in a second-degree murder trial. Henderson v. State, 919 So. 2d 652, 655 (Fla. 1st DCA 2006).

Although both parties cite Henderson, the case is factually distinguishable.  In Henderson, the appellate court found that Henderson lacked an understanding of how to proceed to prove his counsel was ineffective for failing to present character witnesses in the second-degree murder case who would testify as to the victim's reputation for violence in the community. Henderson did not call any witnesses, not even his former defense counsel, which the appellate court noted as "a factor that has been taken into account in other decisions" that reversed the denials of appointment of post-conviction cases. Id. at 656.  Additionally, Henderson involved a timing issue that precluded the petitioner from subpoenaing witnesses because the trial court did not rule on his motion for appointment of counsel until the start of the evidentiary hearing. Id.

The respondent argues that "[p]risoners do not have a federal constituional right to counsel in postconviction proceedings challenging their convictions." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); see also Lee v. State, 847 So. 2d 1142 (Fla. 3d DCA 2003) (affirming denial of appointment of counsel and finding no abuse of discretion in the denial).  Additionally, under Florida law, prisoners do not have a statutory right to representation in collateral proceedings in a non-capital case under Florida law. See Fla. Stat. § 924.066(3) ("A person in a non-capital case who is seeking collateral review

under this chapter has no right to a court-appointed lawyer."). The respondent maintains that pursuant to Rule 3.850(f)(7) of the Florida Rules of Criminal Procedure, the court "may" appoint counsel for post-conviction proceedings based on the consideration of the adversary nature of the proceedings, the complexity of the post-conviction claims presented, the defendant's level of intelligence and education, and the "need" for an evidentiary hearing and for legal research. Fla. R. Crim. P. 3.850(f)(7); see also, Stanley v. Wainwright, 406 F.2d 8 (5th Cir. 1969) (holding that there is no absolute constitutional right to counsel in a post-conviction proceeding); Ford v. United States, 363 F.2d 437 (5th Cir. 1966).[9] Under Florida law, the trial court is vested with the discretion to appoint post-conviction counsel. Lee v. State, 847 So. 2d 1142 (Fla. 3d DCA 2003).

The respondent argues further that "[m]any routine factual disputes can be resolved without the assistance of counsel." Reese v. Sec'y, Fla. Dep't of Corrs., 675 F.3d 1277, 1286-1287 (11th Cir. 2012) (citing Wheeler v. State, 807 So. 2d 94, 97 (Fla. 1st DCA 2002).  In Reese, the Eleventh Circuit held that the need for an evidentiary hearing does not automatically require appointment of counsel. Id. (citing Johnson v. State, 711 So. 2d 112, 115 (Fla. 1st DCA 1998)).  The respondent contends that none of the issues addressed at the evidentiary hearing were so complex that they required substantial research. Response at 67 (DE# 12, 6/19/21). The trial court explained that the petitioner adequately represented himself before the court throughout the proceedings subsequent to his former counsel's withdrawal  as evidenced by the petitioner's numerous filings in the trial court as well as the appellate court. The

---

[9] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

petitioner's initial and amended Rule 3.850 motions for post-conviction relief clearly articulated his claims and cited relevant case law and supporting exhibits including two affidavits from Mr. Claget and Mr. Warren who the petitioner maintained should have been called as witnesses as the probation revocation hearing.  Additionally, the petitioner subpoenaed his former defense counsel to testify at the evidentiary hearing and effectively examined him during the evidentiary hearing.

The respondent concludes that the trial court and the Third District Court of Appeal did not err in denying the petitioner's request for appointment of counsel. The respondent argues that the petitioner's claim should be denied because the denial of his request for post-conviction counsel was not contrary to clearly established federal law, as determined by the Supreme Court of the United States, and/or did not involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.  The undersigned agrees.

In the present case, the undersigned finds that the issues raised in the petitioner's post-conviction motion are not so complex and assistance of counsel was not "essential to accomplish a fair and thorough presentation of the petitioner's claims." See Hooks, 253 So. 2d at 426-427 (Fla. 1971).  Unlike Henderson, in the present case, the defendant called and successfully examined his former defense counsel although he did not subpoena or call  Messrs. Claget and Warren as exculpatory witnesses despite having the time to do so.  The petitioner filed the affidavits of  Messrs. Claget and Warren's in which both witnesses averred a version of the facts that supported the petitioner's version and directly contradicted the officers' testimony regarding the MDMA incident on the sidewalk.   In the underlying probation violation hearing, the trial court

39

found the petitioner's conflicting version of the facts not credible.  Other than speculation, the petitioner offers no clear and convincing evidence to prove that the trial court would believe Messrs. Claget and Warren over the officers' testimony regarding the MDMA sidewalk incident, particularly where, as here, the trial court expressly found that the petitioner's version of the facts was not credible.

Unlike Florida decisions that reversed orders denying a defendant's motion for appointment of counsel in post-conviction proceedings, in the present case, the issues raised in the post-conviction motion "[were] not so complex as to require the appointment of counsel in order to accomplish a fair and thorough presentation of petitioner's claims to the [trial court]." Hooks, 253 So. 2d at 427.  Under Florida law, the trial court, not the appellate court, has the discretion to determine whether the Graham factors have been met to warrant appointment of counsel in a post-conviction proceeding. Here, the appellate court affirmed per curiam the trial court's determination that the issues raised in the post-conviction motion and the evidentiary hearing were not so complex as to warrant appointment of counsel. The petitioner did not rebut the trial court's determination and did not satisfy his high burden of showing by clear and convincing evidence that the denial of his request for post-conviction counsel was contrary to clearly established federal law, as determined by the Supreme Court of the United States, and/or did involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. The undersigned recommends that the Court deny habeas relief on the petitioner's claim based on the denial of appointment of post-conviction counsel.

CONCLUSION

The petitioner failed to overcome the substantial deference afforded to the state court rulings on his ineffective assistance of counsel claims and denial of his request to appoint post-conviction counsel. 28 U.S.C. § 2254(e)(1); Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. at 102-103 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1975) (Stevens, J., concurring in judgment)). The rejection of petitioner's motion for post-conviction relief by the state trial and appellate courts, where the identical claims of ineffective assistance counsel presented in this federal proceeding were raised, is neither in conflict with clearly established federal law nor based on an unreasonable determination of the facts, and the state courts' results should not be disturbed. 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 405-406 (2000). The petitioner is not entitled to habeas relief on his claims of ineffective assistance of counsel.  Additionally, the petitioner is not entitled to habeas relief based on the trial court's refusal to appoint counsel for the post-conviction evidentiary hearing.

**RECOMMENDATION**

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the Amended Motion to Vacate [Judgment] and Sentence and Incorporated Memorandum of Law (DE# 9, 5/3/21) be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any,

with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

Respectfully submitted in Chambers at Miami, Florida this 18th day of October, 2021.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE